If the court please, Dylan Jackson for the appellant Pacifica L 51 with me as Stuart Kastner co-counsel on the case. I'd like to reserve two minutes for rebuttal and I understand I watched my own time. Initially I want to inform the court that all remaining funds payable under the sale that was approved by the bankruptcy cart are in the hands of the dispersing agent to be distributed for payment to Pacifica in accordance with its contract or payment to the seller as an increase in its profit on the sale depending upon the outcome of this appeal. I'm aware also of the court's directive to discuss Phoenix Partners or sorry Phoenix Business Park and the Moody case from Texas and I'm prepared to do so but I would like to commence by making it clear that Ence White was abrogated by the plain language of section 1123 D. The foundation for the Ence White case was and this is a quote the code does not define cure end quote page 1340 and then later on it adopts it would give some import to the cure language in 1123 A5G. Well the code still doesn't define cured. In other words what Ence White said was the question is whether cured means the pre default situation or the post default situation and that ambiguity or dichotomy is still the case i.e. the agreement that's governing is it we still don't know whether it's the pre default or post default version so I don't see why Ence White doesn't just translate directly i.e. it decided it was the pre default situation that the that cured means put you back as you were before the default. Well because the directive in 320 or 1123 D this says how do you cure? No. What do you pay? Yes. I'm sorry your honor it and let's let's go of dispute. If it is I just disputed it so well that's that's why we're here. If it is proposed in a plan to cure a default that's what happened here the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law and that's really the directive that is it's very clear and which abrogates Ence White's determination no ignore state law. Does that apply? Counsel? Counsel? Let me I'm sorry I'm sorry I just gonna ask does that apply to an impaired creditor or an that that goes to 1124 and if okay let's do that. 1124 is a statute that defines whether you are permitted to vote on a plan. To vote on a plan? To vote on a plan. If you are unimpaired under the definitions of 1124 you're not allowed to vote in fact not only are you not allowed to vote you're presumed or determined by that statute to have voted in favor of the plan and it's it's a irrebuttable presumption you can't say oh never mind what that says I'm voting against the plan you simply can't. 1124 consistent with Tadeo consistent with the quotes in Pacific or Phoenix Business Park all deal with accelerated debts chapter 13 the protections to save a family home in chapter 13 despite. But counsel you're asking us to look at the text and not at what they're you know the sort of generic context and if you look at the text of 1124 then it would never apply because there would be no situation in which cure happens without interest. So it would make this provision non-operable to read the other section 1123 D the way you're asking us to read it so doesn't that create an ambiguity. I don't believe it does because 1124 continues on and accepts out that you are required to cure accepts out debts that are accelerated in other words if the debt is accelerated this was an impossible situation particularly in chapter 13 and that's why Tadeo is such a strong precedent. Chapter 13 debtors can't afford to come up with cash to cure they're allowed to cure over a three to five year period and that cure is because of acceleration or the need for that cure is because the creditor has accelerated so chapter 13 discussions deal all about this what the mistake that was in Ants White's original decision and continues on in the Phoenix Partners case is what we're concerned about and what we're trying to preserve in the bankruptcy code is the ability to reverse an acceleration by cure. But it doesn't say that it also says it has accelerated payment but it says or interest after the occurrence of a as to acceleration. With respect your honor you're misreading the provision this is another provision that commences with the word notwithstanding and it directs us to look at a provision that entitles the claim of a holder of a claim or interest to demand or receive accelerated payment it references accelerated then it goes on. It does but then the question is whether it's deeply ambiguous because it could mean accelerated payment of the claim or accelerated payment of the interest or it could mean accelerated payment of the claim or interest without being accelerated. That the term interest as it's used there is ownership interest like stock it is not statutory or promissory note interest that is that is claimer interest is used throughout the and it differentiates between a claim based upon some right to payment and interest which is an ownership interest in the debtor. I mean this is a kind of thing that was dealt with recently in the Zachary case. But it even as to acceleration yes it's inconsistent with your reading of the new provision 11 23d right because it overrides the agreement. In other words it's understanding of cure and so the ultimate question becomes what does cured any default mean and apparently in this sentence it means put you back as if before the default with her at least with regard to acceleration is that right? In other words it is not it is telling you not to rely on the agreement. It tells you with regard to acceleration you do not rely on the agreement because acceleration throughout the throughout the Bankruptcy Code in 1978 has been to allow debtors to reverse acceleration but and Moody discusses well you know you could reverse an acceleration but you still could have a situation where the debtor is or the creditor is impaired and that does happen where the creditor is unable to pay off a due debt that maybe is due by its terms and they turn it out as a new So a cure does not necessarily mean that all the incidences of have been met to allow. So what is your understanding of the term cure a default? Now I understand that you're relying on Washington law which uses the same term and you say there doesn't seem to be any argument to the contrary that Washington law would force this interest but it isn't necessarily the case that the two sets of law use the term in the same sense. So the question is what does cure a default mean in the Bankruptcy Code in general? Eleven I've made made the argument I mean it's clearly says you must provide a cure in compliance with the documents and applicable non-bankruptcy law. I think that the case law with regard to interpretation of plain language and if I if I can I go on to why I believe that Phoenix was incorrect. The case law with regard to plain language has been with us for a long time. This language is in my view crystal clear and trying to throw confusion into it by either as Phoenix Partners or Business Park did by saying well I don't understand why didn't put more not with provisions into the notwithstanding provision and then go on to talk about the legislative history which of course were directed not to look at. Phoenix part Phoenix Business Park did not have the benefit of the many cases that have recently come through in this court in the Supreme Court. Lammy, Hartford Underwriters, Baker Botts just recently this year, Law versus Siegel, Ron Pair, Rake versus Wade itself was a plain language. We're sorry about this result but the statute says you get interest on interest. Well there's several Ninth Circuit cases that's you know cite to still to to Inswight or that not to cite to insight but seem to over or to say that Inswight is still good law including Inree Southeast Company, Inree Silmar Plaza and General Electric Capital Corporation. Well General Electric Capital Corporation or future media specifically stated that 1123 D was plain language and that it appeared and it would be that it was in question and we can go to the footnote but at this point let me let me address a couple of things. Number one, Silmar Plaza a Ninth Circuit case post amendment in which there was no mention of a problem with the Inswight decision but if you look at the reply brief in that case the creditor stated does not dispute the right of the debtor to use provisions of 1124-2 to reinstate a defaulted obligation as part of the if you don't ask. Also that case that case was about good faith was it not it wasn't a direct discussion of Inswight's validity it had to do with good faith and if you follow a case even if it should be overruled you see it would be acting in good faith so. That's correct. Presumably it doesn't answer the question. But the point being is it's a Ninth Circuit post post amendment case in which Inswight was cited and not criticized and I'm just saying that the appellant didn't ask for it. Let me ask you a couple questions before your time is up. Assuming Pacifica's is unimpaired under 1124-2A and 365-B-2D can it nonetheless be entitled to be paid default interest under 1123-D? Yes because the because because that is the the unimpairment issue is based upon whether you've achieved a cure and the cure is defined in 1124-D or 3-D as requiring payment under the contract. So I guess I think the answer then becomes no. In other words, Judge McGinn is asking whether whether it is possible for you still to be impaired despite the fact that it was a cure for I'm not saying it out right. Let me just say in other words let me let me ask you this section 1123-D. Yes. Forced the bankruptcy court to require that a creditor be paid default interest even if that creditor is technically unimpaired under 1124-2A and lacks standing to object to the plan. Both both cannot occur at the same time because the the payment of the cure is made as directed by Congress then you're not unimpaired. Let me ask you this I know you disagree that there's any ambiguity but let's just respectfully let's just say assuming arguendo there is some ambiguity and we reach the legislative history. What what are we to make of the statement in the that says it is the committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred. Seems like your reading would do the opposite. Not at all because I think that this is the cure there was no 1123 defines what needs to be done for a cure. As far as the legislative history goes rake versus wade was a national problem. Enswite was regional. It was natural for them to comment on what was of had natural impact the interest on interest situation with rake rake versus wade. The other thing I would like to point out is that Enswite decision itself gives us guidance on how to treat the legislative history. In discussing the acceleration clause issues they at they say that if the legislative history is not clearly contrary to the broad statutory language it shows that the drafters of this in this case the Senate were concerned primarily with defaults resulting from acceleration. It does not show that they meant to confine the section to that situation. So the fact that legislative history discuss every impact even Enswite said yes that's that's a proper review of that legislative history is is is it may have other effects that are not not treated. You're over your time. I understand. If you will give you a minute of rebuttal. Thank you very much. May it please the court Lawrence Engel for the appellee new investments. Your honor I think it's important to try and respond to some of the points the court made and asked Mr. Jackson. I think one significant point I'd like to make is that as stated in the appellee's brief one of the important things that needs to be done in interpreting a statute is trying to figure out whether there's a overriding theme or scheme or regulatory scheme that's coherent throughout the you go back to the definition of cure they find it throughout the bankruptcy code in a number of cases. May I ask you the question about about the legislative history? Yes. Because your position is as I understand it that there's an ambiguity in this in the section that is being relied on to find cure and the penultimate sentence in the legislative history says this provision quote will limit the secured creditor to the benefit of the initial bargain end quote. So my question to you is this wasn't the initial bargain here an extra high interest rate upon default and isn't your opposing counsel's reading of 1123 D consonant with not only the text but also the explanation? Well your honor I guess the way I read that legislative history is a little bit different. I read it being consistent with N. Swyatt. The benefit of the bargain is originally the contract rate and if you apply the concept of the contract had more than one rate in it that's my problem with your position. When I say contract rate I mean the non-default rate. No I know you do but but it wasn't that part of the bargain that there would be a default rate that wasn't imposed by a stranger wasn't that part of the deal? Well I guess the way I look at the legislative history your honor is just simply I think it's I think it's consistent with N. Swyatt and the whole point and thrust of Mr. Jackson's argument is that 1123 D was intended to legislatively overrule N. Swyatt and his progeny and that's clearly not the case. It doesn't matter whether that was its specific intention it was specifically intention intended to overrule Rake versus Wade but the question really is whether by using the words that Congress used it has the effect of overruling N. Swyatt so we're not worried about what they were thinking about N. Swyatt. I don't think they were thinking about it at all but they were thinking about giving the secured creditor the benefit of the initial bargain and so I guess my question to you is what was the default interest rate as well? Well your honor I think you've got to read that legislative history along with G. Kaplan and its interpretation of N. Swyatt because essentially what we have here in 1123 A. Y. G. is the ability to essentially roll back the default interest to restore the status quo and when you do that you the creditor gets the benefit of the bargain that benefit of the bargain was initial deal which was the contract rate. So you still haven't answered my question was the default rate pursuant to an agreement between the parties that there would be such a rate? It's in the agreement yes but there's a countervailing provision of the bankruptcy code that allows you to roll that back and that was not abrogated by the passages 1123 D. Because 1123 doesn't say there is no default interest. You've got to read 1123 D. and have it be consistent with 1124 A. 2 and with all due respect to Mr. Jackson that's the way professor, not professor but Mr. Clee reads it. It reads the, he reads the paragraph with regard in 1124 focusing on language of a kind in 365 B. 2. Of a kind you got to read the plain meaning of that into this into the statute. The plain meaning of that is incorporating it by reference. You're incorporating that by reference and you're saying you have the ability to cure a default for impairment purposes and if you could if you have for impairment purposes you've got to be as far as the plan provisions. Why? Why? Otherwise the statutory scheme doesn't make any sense and they're totally inconsistent provisions. They've got to be harmonized. Which would be inconsistent? Pardon me? The inconsistent provision that you're pointing to is which? The two inconsistent provisions would be the reading that Mr. you look to the agreement and that controls on everything and then for cure purposes or for impairment purposes a cure that does not pay default interest is acceptable and that that secret credit then is not impaired. Well he just got to read those. I think what he's arguing is that that 1124 pertains only to acceleration so that it's about a different topic and what is your response to that argument? I think it I think it pertains to dealing with cure. Talks about yes there's been an acceleration. You have the ability to deaccelerate with cure provisions. 1123a 5g says you can cure any default that would include acceleration. But it doesn't explain how. 1124 says cures any such default but it the fact that 1123, this is the argument anyway, 1123 explains what you do to cure and that you would import that into 1124 as being the meaning of cure in both sections. Why isn't that another way to reconcile them? Well I don't think it's a way to reconcile them your honor because otherwise you'd be emasculating your particular. I'm sorry you would be what? You would be emasculating the cure provisions under chapter 11 in particular. The plain meaning of cure is restore the status quo ante. That means you are eliminating all the vestiges of default. In this case. So that's why to me apparently Washington law uses the term cure the default. I mean you can tell me whether this is true or not. I under Washington law the term cure the default applies to a situation in which what one of the things you need to do to cure it is pay post default interest. Is that right? You're talking about the deed of trust statute your honor? Yes. Is that correct? Has it been construed to mean that? I believe that's correct. However I'd so. And that's why it seems to say that cure the default means entirely cure it so we're at status quo ante which is what you were just saying. Yes. And so the question comes down to what does cure the default mean? Well your honor I think in terms of what I'll refer to and refer to my brief is dote of the Washington deed of trust statute. It doesn't apply here. The applicable non-bankruptcy law has to be relevant under Patterson versus Shoemate. It's not. There is no foreclosure situation applying here. The case got resurrected. There was an automatic stay in place. Pacifica moved for relief from stay. That was denied. We proceeded with plan confirmation. We confirmed a plan. We closed the sale. We cured. All of that with Pacifica objecting along the way but it was approved by the court. It's got if you look at the Landmark case that I cited in our brief you the applicable non-bankruptcy law has got to be relevant. In the Landmark case there was an issue and they were trying to probably a federal contract rate of interest to a situation and it was in a 13 if I recall but in the Landmark case. I understand your argument but it's still the case that this was sort of an arrested foreclosure. Well it was a suspended and stayed foreclosure. It never came to fruition and so it's not relevant with regard to cure. Then the whole reference to state law becomes a nullity because the whole point here is that we're going to be there's going to be an automatic stay always isn't there? Well there is your honor but you can't look at that as an example of applicable non-bankruptcy law. Mr. Jackson and the appellant have cited no authority. So there is no applicable non-bankruptcy law because the bankruptcy law has stayed through foreclosure so we don't look at state foreclosure laws is that right? That's right. I mean the whole purpose of chapter 11 is to rehabilitate the debtor and put the debtor and the debtors creditors in a position where they can be paid and that the secured creditor foreclosing is held off. Is there a case law in Washington construing RCWA 61.24.09? I'm not aware of that your honor. Mr. Jackson was the one who cited that and he cited no authority. I cited some authority as far as what the three-party aspect of a debtors foreclosure is but as far as I'm concerned your honor I don't believe that it's applicable and it's not applicable because because it's dealing with a situation that doesn't apply. I think if you want to get to applicable non-bankruptcy law you've got to get to some case law saying something this or that and it's not cited by the appellant. Why wouldn't statutes suffice as non-bankruptcy law? You said there had to be a case. If that statute is not relevant there's no foreclosure. So you're not making a general argument that statutes can't be relevant. No I'm not your honor. I'm saying I mean in the landmark case there was a statute that applied federal judgment rate of interest to some issue and I think it was a fourth circuit found no that doesn't apply here because there is no judgment claim. It's not applicable bankruptcy law. It's not relevant. You've got to go back to Patterson versus Shoemate to see what that means. It's not just any old garden variety non-bankruptcy law. It's got to be a bankruptcy law that's applicable and relevant. Assuming we disagree with Phoenix Business Park's discussion. Excuse me your honor. Assuming we disagree with Phoenix Business Park's of unimpaired claims under this 1124 2a and 365 b 2d how does your view prevail? My view prevails with the argument that was in the original appellee's brief your honor and that is that you've got to have a coherent whole in terms of regulatory scheme. You've got to have the ability to affect the cure. That's Phoenix Business Park basically. I mean it says it has to look at the whole statutory scheme. Well you could you could say it's Phoenix Business Park but I guess what I'm telling you is I think if you look at the whole system of curing and the commonly accepted definition and the plain meaning definition of cure it's to restore the status quo ante. If you're restoring the have the ability to roll back that default interest in the events of default. Otherwise that provision of the statute and the use of that language throughout the code makes no sense. Well so you can you can but that 1123 D is pretty clear. I don't think it's all that clear your honor because it doesn't go far enough. What did it need to say? Well for one thing 1120 1123 D doesn't say in all instances you apply default interest. It says you go back and look at the agreement but it doesn't preclude you from utilizing the provisions that as GE Capital determined and preserved in terms of the holding of Ents White that you have contrary and qualifying and contrary provisions of the bankruptcy code will control over state law principles. That's age-old law interpreting the bankruptcy code. Buechner. It is but can't Congress alter that by specifying that it shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law. So is that beyond Congress's power? Can't they say in this instance we're looking to state law and to the contract? I don't think it's beyond Congress's power but I don't think that's what was intended. I think you get into a situation I presented the court with a number of rules of construction where you get to the legislative history. I think looking at the legislative history it was clear there was no effort to mandate the default interest to be paid in every instance. There was a situation to avoid the compound interest or interest on interest situation of Rake versus Wade that's not provided for in any agreement. So it depends on how you look at the statute. You could look at it as being not ambiguous but still not expressing what Congress intended it is in the legislative history and that's in the Rompere case, Your Honor. So I guess it leads me back to the question I think Judge Berzon was asking you and you know how can we say that a creditor is ever unimpaired if the plan deprives them of interest, of default interest that was required under the loan agreement? Well I think you've got to go back to Congress and look at the language 1124A2. They're incorporating by reference taking penalty rate out of the concept of impairment. It's eliminated from the concept by the language of a kind which should be I think in a situation where you've got the ability to cure through a plan. It's a qualifying and contrary provision. There's no provision of the bankruptcy code that precludes you from doing that and I think that Congress didn't intend to emasculate the cure provisions in the code and you get to that by looking at the legislative history that Judge Graber asked me about. I just interpreted a different way. I think that that language reaffirms Ence White's definition of cure and restoring the status quo ante. I think I'm out of time. You are out of time. Do we have other questions? I have one other question but I need to find it. There was some reference along the way to the executory contract language. Yes. You're talking about in Phoenix Business Park? I mean in Moody? In which I'm sorry? In the Moody case? Yes, but it doesn't seem to me applicable. One thing, this is not as such an executory contract. It's a secure interest, right? Well, Your Honor, I think I think there's a serious problem with the Moody case throughout and that is it cites very little authority. It's just one judge's interpretation of the statute. That's one problem with the case. The other case is it's very short-sighted to 1124A2 in the manner that it does because it's totally ignoring the phrase which is very significant interpreting that section is of a kind. I'm talking about 365B and it was at least in some variety said to support your position, but the problem is that, in other words, by saying that you're essentially you're not allowed, you can't impose a penalty rate, but it applies to executory contracts or unexpired leases of the debt, which this is not, right? It does not, Your Honor, but the statute uses the phrase, 1124 uses a phrase I believe is of a kind and then it reverts to it and that's a method of incorporating the provisions of 365B2D by reference. That's the way Kenneth Klee interprets it. I think that's the correct interpretation of the plain meaning of the statute in terms of what you're doing there. So, and if you look at the interpretation in the Ninth Circuit of the section 365B, you go back to the Claremont case and it says there's particularly two clauses there, not one as Moody, as Moody provides those two clauses. With the general statutory interpretation rule regarding the previous antecedent, which is generally that a phrase only applies to the, well, I guess it's consistent with the previous antecedent rule actually, but... Well, there's another way, there's another way you can interpret it. You look at the rules of construction, the bankruptcy code in section 102, and section 102 defines... Okay, you are behind your time and I took up some of your time, so thank you. Thank you, Your Honor. Thank you for allowing me an additional minute. Just to make it clear in case it isn't from the record, this note had matured by its terms that there was no acceleration demanded or in effect with regard to this case. But your interpretation has to be consistent with the situation in which there was an You're agreeing to, that you're positing is that curing means eliminating the acceleration, but it doesn't mean eliminating the default interest. That's correct. And the question to me is where do you get that from in the code? Well, I get it from 1123 D and we've already discussed that. I don't want to repeat my arguments, Your Honor, but let me just say, let me talk about the reference into 365, which deals with leases. First of all, this court has held in the THC finance case that a lease is entirely different from an obligation that's due on a liquidated amount by its terms. And we could go through all the issues of why leases are different than notes, but I don't think it's necessary. The other thing that is referenced that frankly I raise as a quandary is the use of the term penalty rate. Penalty, at least under Washington law and I think in many states, is a word of art. A penalty in the state of Washington is not enforceable under liquidated damage clause analysis. So the use of the word more than simply increased interest occasionally defined. You have no case law interpreting the Washington statute, is that right? I mean, in other words, we don't really know. Go ahead. Yes, we do. Because what the Washington statute does is it has very, very strict and detailed notices that must go out and you must detail each and every charge that you require to be paid and you can cure up to 10 days before the foreclosure sale. And the cure under Washington law is to pay what is in that notice. If a debtor disputes the amount that is in the notice, they can bring that matter before the court. They could seek an injunction of the foreclosure, which is provided for also in the statute. They could tender the full amount and then sue for refund on the basis. But the reason why I argue from that statute is that a foreclosure was pending in this case and those are among the charges that a debtor must pay to cure to prevent. But you don't have, to repeat, I looked at your brief and you're standing here now and you still don't have any case law. That's because these cases have not been appealed, Your Honor. They haven't been. Fine, but the answer to my question was, yes, there is no case law. There is no case law that I'm able to find. There is case law on whether default interest or default terms or forfeited earnest money is an illegal penalty. And believe me, a mere increase of five percent, which is typical for many, many, many secured notes, would not be deemed a penalty under Washington law. Just simply from the parameters of those liquidated damages cases, I want to make one point and before I sit down, if I can. I've not referenced to this Court, I think it's extremely important, this is the Travelers case and its adoption and approval in future media. I've already mentioned... Is this a case that you haven't cited to us before? What? Is this a case you haven't cited before? No, not at all. Future media and That's correct. This is where the Court found that lease is not the same as a contract with a due note. But Travelers and future media are cited. But the point is, what they reference is the overriding policy in bankruptcy. It's not confusion or maintaining cure and so forth. The overriding policy in future media is that creditors entitlements in bankruptcy cases are in the first instance analyzed under the substantive law that creates the obligation. There's directive in Travelers that we give credence to the argument. Just in case, the Pacifica v. New Investments case is submitted and we'll go to the last case of the day.
judges: Graber, Berzon, Murguia